IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
_____

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 19-cr-20349-JTF-tmp |
| | ) |
| **ALFREDO SHAW,** | ) |
| | ) |
| Defendant. | ) |

_____

**REPORT AND RECOMMENDATION**
_____

Before the court by order of reference is a motion to suppress evidence filed by defendant Alfredo Shaw on June 17, 2020. (ECF Nos. 43 & 44.) The government filed a response on July 30, 2020. (ECF No. 50.) For the reasons below, it is recommended that the motion to suppress be denied.

### I.  PROPOSED FINDINGS OF FACT

The following proposed findings of fact are based on the testimony of Shelby County Sheriff's Office Deputy Kristan Holst and Detectives William Hampton, Gary Alan Beans, and William Luis Dotson, III, all of whom credibly testified at the evidentiary hearing held on September 8, 2020. (ECF No. 54.) Defendant called Marlon Johnson and Yolanda Shaw as witnesses. (Id.) The evidence

presented at the hearing included audio-video footage from Deputy Holst's body camera. (Body Cam Video, Hr'g Ex. 1.)

On May 10, 2019, Deputy Holst and her partner responded to an aggravated assault call at 658 Creekstone Circle in Memphis, Tennessee. When the officers arrived, they were met outside by the victim, Derrick Stamps, who stated that his neighbor, Alfredo Shaw, pointed a gun at him and threatened to kill him during a verbal altercation. Officers also spoke with another neighbor, James Pork, who told officers that he had witnessed the incident and tried to intervene on behalf of Stamps. Pork stated that Shaw also threatened him with the firearm.

Officers then approached Shaw's residence, located at 670 Creekstone Circle, and found Shaw standing outside on the front porch. Shaw admitted to arguing with Stamps but denied having a firearm during the altercation. The officers detained Shaw and placed him in the back of Deputy Holst's squad car. Deputy Holst called her sergeant to have detectives sent to the scene. While waiting for the detectives to arrive, Shaw's wife, Yolanda Shaw, returned to the residence from work. Deputy Holst escorted her inside to retrieve her purse.[1]

---

[1] No evidence was recovered during this entry of the residence, and this entry is not the subject of this motion to suppress.

Once Detectives Hampton, Beans, and Dotson arrived at the scene, Deputy Holst informed them about what had occurred. During the discussion, Detective Beans mentioned they might need to obtain a search warrant for the residence. Detective Dotson later commented that Mrs. Shaw might consent to the search. At the end of the discussion, the detectives decided to interview the witnesses and suspect and then ask Mrs. Shaw for consent to search the residence. After detectives interviewed the witnesses, Mrs. Shaw approached detectives to ask for an update on the investigation.[2] During the following discussion with detectives, Mrs. Shaw stated that her daughter owned a firearm and offered to show it to them. Detective Hampton then asked Mrs. Shaw if she would sign a consent form and she agreed. (Consent to Search Form, Hr'g Ex. 2.)

After Mrs. Shaw signed the consent form, she took detectives into the house and showed them where the gun was located inside

---

[2] Shaw disputes that his wife approached law enforcement, asserting that, in fact, the detectives approached her. Shaw does not, however, dispute that law enforcement obtained her consent to search the residence. While the issue of who approached whom is irrelevant to the legal analysis in the section below, the differing accounts of the encounter do raise questions about the witnesses' credibility. Detective Hampton testified that Mrs. Shaw approached the detectives, and Mrs. Shaw testified that detectives approached her. Deputy Holst's body cam did not capture footage of this encounter. To the extent that Mrs. Shaw's testimony contradicts that of Detective Hampton on this point, the undersigned finds that her testimony is not credible.

her daughter's bedroom closet.[3] The detectives recovered the firearm, a Black SCCY 9mm caliber pistol, from a gun box inside the closet. The gun was loaded with 10 rounds in the magazine and 1 round in the chamber. A second magazine loaded with 9 rounds was also found in the box. Alfredo Shaw was arrested on two counts of aggravated assault. A federal grand jury in the Western District of Tennessee returned a one-count indictment against Shaw on December 12, 2019, charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

## II. PROPOSED CONCLUSIONS OF LAW

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. "A warrantless search or seizure is '*per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" United States v. Roark, 36 F. 3d 14, 17 (6th Cir. 1994) (quoting Katz v.

---

[3]Mrs. Shaw also testified that detectives had to remove things from the closet to search for the gun before she directed them to it. Her testimony on this point contradicts that of Detectives Hampton, Beans, and Dotson, all of whom testified that the gun box was in clear view when they opened the closet. As with the testimony discussed in footnote 2, this factual dispute is not relevant to the legal analysis in the section below. However, to the extent that Mrs. Shaw's testimony contradicts that of the detectives, the undersigned finds that her testimony is not credible.

United States, 389 U.S. 347, 357 (1967)). The exception relevant here is consent. See United States v. Purcell, 526 F.3d 953, 960 (6th Cir. 1994) ("'An officer with consent needs neither a warrant nor probable cause to conduct a constitutional search.'") (quoting United States v. Jenkins, 92 F.3d 430, 436 (6th Cir. 1996)).

"It is well-established that a third-party can consent to a search of jointly occupied property, as long as the third-party has 'common authority' over the premises." United States v. Moore, 917 F.2d 215, 223 (6th Cir. 1990) (citation omitted); see also United States v. Gossett, 600 F. App'x 330, 334 (6th Cir. 2015) ("It is axiomatic that consent to search must come from someone authorized to give it.") (citing Purcell, 526 F.3d at 962). Notably, Shaw does not challenge his wife's authority to consent to the search. Rather, he argues that law enforcement ran afoul of the Fourth Amendment because the officers deliberately avoided asking him for consent in order to obviate the ramifications of his possible refusal. Shaw cites two cases in support of his argument: Georgia v. Randolph, 547 U.S. 103, 120 (2006), and United States v. Ayoub, 498 F.3d 532 (6th Cir. 2007).

In Randolph, the Supreme Court held that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police

by another resident." 547 U.S. at 120. In other words, "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." Id. at 122-23. The Court was careful in Randolph not to overturn the holdings of two prior cases, United States v. Matlock, 415 U.S. 164 (1974), and Illinois v. Rodriguez, 497 U.S. 177 (1990). In distinguishing those cases, the Court stated as follows:

> Although the Matlock defendant was not present with the opportunity to object, he was in a squad car not far away; the Rodriguez defendant was actually asleep in the apartment, and the police might have roused him with a knock on the door before they entered with only the consent of an apparent co-tenant. If those cases are not to be undercut by today's holding, we have to admit that we are drawing a fine line; *if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out*.
>
> This is the line we draw, and we think the formalism is justified. So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it. For the very reason that Rodriguez held it would be unjustifiably impractical to require the police to take affirmative steps to confirm the actual authority of a consenting individual whose authority was apparent, we think it would needlessly limit the capacity of the police to respond to ostensibly legitimate opportunities

> in the field if we were to hold that reasonableness required the police to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received. There is no ready reason to believe that efforts to invite a refusal would make a difference in many cases, whereas every co-tenant consent case would turn into a test about the adequacy of the police's efforts to consult with a potential objector. Better to accept the formalism of distinguishing Matlock from this case than to impose a requirement, time consuming in the field and in the courtroom, with no apparent systemic justification. The pragmatic decision to accept the simplicity of this line is, moreover, supported by the substantial number of instances in which suspects who are asked for permission to search actually consent, albeit imprudently, a fact that undercuts any argument that the police should try to locate a suspected inhabitant because his denial of consent would be a foregone conclusion.

Randolph, 547 U.S. at 121-22 (emphasis added).[4]

In Matlock, law enforcement arrested the defendant in the front yard of his residence and placed him in a squad car. 415 U.S. at 166; see also id. at 179 (Douglas, J., dissenting) (stating that the defendant "was restrained in a squad car a distance from the home."). "Although the officers were aware at the time of the arrest that [the defendant] lived in the house, they did not ask him which room he occupied or whether he would consent to a search." Id. at 166. The arresting officers went to the door of the house and were admitted by another resident of the house who "consented voluntarily to the search of the house, including the

---

[4] Of course, Randolph is distinguishable from the instant case because Shaw did not expressly refuse to consent to the search.

east bedroom on the second floor which she said was jointly occupied by [the defendant] and herself." Id. The defendant challenged the admissibility of evidence recovered during the resulting search of the east bedroom, arguing that his co-occupant lacked authority to consent to the search. Id. at 166–67. The Court held that "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." Id. at 170. The Court additionally held that "when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." Id. at 171. The Court ultimately concluded that the co-occupant's voluntary consent was legally sufficient to warrant admitting the evidence recovered during the search. Id. at 177.

In Ayoub, the Sixth Circuit Court of Appeals reiterated that "if a potential defendant with self interest in objecting to the search is present and actually objects, then a third party's permission does not suffice for a reasonable search." 498 F.3d at 537 (citing Randolph, 547 U.S. at 121). "If that potential objector is 'nearby but not invited to take part in the threshold colloquy,'

on the other hand, that potential objector 'loses out,' and the search will be deemed valid." Id. (quoting Randolph, 547 U.S. at 121). In fact, such a potential objector loses out "even if in a police car near the scene." Id. at 540-41 (citing Randolph, 547 U.S. at 121 (discussing Matlock, 415 U.S. at 170); United States v. Wilburn, 473 F.3d 742, 744-45 (7th Cir. 2007)). "Consent is valid in these circumstances '[s]o long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection.'" Id. at 541 (quoting Randolph, 547 U.S. at 121).

In this case, Shaw's Randolph challenge is based on his assertion that officers removed him from the entrance of his residence and placed him in the squad car for the sake of avoiding his objection. The underlying facts of this case are similar to those addressed in Matlock, in which the defendant was detained by law enforcement and placed in the back of a squad car, law enforcement sought and obtained consent to search the residence from a co-occupant, and officers recovered evidence during the resulting search. 415 U.S. at 166–67. The Court found no Constitutional violation in Matlock. Id. at 170–71. Accordingly, the search is valid unless there is "evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection." Randolph, 547 U.S. at 121.

Although law enforcement may not remove a defendant from the premises "specifically for the purpose of avoiding an objection to the consent to search," United States v. Jackson, No. 1:14-cr-29, 2015 U.S. Dist. LEXIS 97143, at *37–38 (E.D. Tenn. June 12, 2015) (citing Randolph, 547 U.S. at 121), Matlock and Randolph make clear that "police may remove such a potentially objecting tenant for a legitimate purpose." United States v. Lopez, No. 3:12-CR-18, 2012 WL 6764066, 2012 U.S. Dist. LEXIS 184211, at *87 (E.D. Tenn. Aug. 22, 2012) (citing Randolph, 547 U.S. at 121). For example, the officers in Matlock removed the defendant for the legitimate purpose of placing him under arrest. 415 U.S. at 166.

In this case, deputies detained Shaw and placed him in the back of a squad car after responding to an aggravated assault call and speaking to two witnesses who said Shaw threatened them with a firearm. Deputy Holst informed Shaw that he was being detained until detectives could arrive at the scene and take his statement. Deputies did not discuss any intention to search the residence prior to detaining Shaw. In fact, no discussion of searching the residence occurred until after the detectives arrived, at which point Shaw had already been detained in Deputy Holst's squad car for almost an hour. This demonstrates that when deputies detained Shaw, they did not do so with the intent of avoiding his objection. See United States v. Eastman, No. 1:13-CR-21, 2014 WL 460878, 2014

U.S. Dist. LEXIS 14012, at *8 (E.D. Tenn. Feb. 5, 2014) (holding that law enforcement cannot remove a defendant "with the intent of avoiding an objection."). This is not a situation in which officers created a plan to search the house and then removed the defendant before enacting it. Rather, the evidence establishes that Shaw was detained for a legitimate purpose. See Wilburn, 473 F.3d at 744-45 (finding valid third-party consent where potential objector was kept in squad car 40 feet from residence because "the police were not obligated to bring [him] to [the consenting party] so he could be a party to the discussion regarding consent"); see also United States v. Prado, No. 3:16-CR-99-RGJ, 2018 U.S. Dist. LEXIS 187370, at *7 (W.D. Ky. June 15, 2018) (rejecting the argument that defendants must be "given a fair opportunity to object" to a co-tenant's consent, stating that "there is no such requirement.").

Because there is no evidence in this case that law enforcement removed Shaw to avoid a possible objection, Shaw falls within the category of potential objectors "nearby but not invited to take part in the threshold colloquy," and he "loses out" as a result. See Randolph, 547 U.S. at 121.

### III. RECOMMENDATION

Based on the above analysis, it is recommended that the motion to suppress be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

October 26, 2020
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**