**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Case No. 2:19-cr-20349-JTF** |
| | ) |
| **ALFREDO SHAW,** | ) |
| | ) |
|     **Defendant.** | ) |

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION,**
**DENYING DEFENDANT'S MOTION TO SUPPRESS,**
**AND DENYING DEFENDANT'S OBJECTIONS**

Before the Court is Defendant Alfredo Shaw's Motion to Suppress, filed on June 17, 2020.

(ECF No. 43.)  The Motion was referred to Chief Magistrate Judge Tu M. Pham on June 19, 2020.

(ECF No. 44.)  The Chief Magistrate Judge held a hearing on September 8, 2020 (ECF No. 54)

and issued a Report and Recommendation to Deny Defendant's Motion to Suppress on October

26, 2020.  (ECF No. 58.)  Defendant filed his Objections to the Report and Recommendation on

November 9, 2020, and the United States filed its Response on December 14, 2020.  (ECF Nos.

59 & 66.)  For the reasons provided herein, the Courts **ADOPTS** the Magistrate Judge's Report

and Recommendation, **DENIES** Defendant's Objections, and **DENIES** Defendant's Motion to

Suppress.

## LEGAL STANDARD

Congress passed 28 U.S.C. § 636(b) "to relieve some of the burden on the federal courts

by permitting the assignment of certain district court duties to magistrates."  *United States v.*

*Curtis*, 237 F.3d 598, 602 (6th Cir. 2001).  Pursuant to the provision, magistrate judges may hear

and determine any pretrial matter pending before the Court, except various dispositive motions. 28 U.S.C. § 636(b)(1)(A).  Regarding those excepted dispositive motions, magistrate judges may still hear and submit to the district court proposed findings of fact and recommendations for disposition.  28 U.S.C. § 636(b)(1)(B).  Upon hearing a pending matter, "[T]he magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact."  Fed. R. Civ. P. 72(b)(1); *see also Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003).  Any party who disagrees with a magistrate's proposed findings and recommendation may file written objections to the report and recommendation.  Fed. R. Civ. P. 72(b)(2).

The standard of review that is applied by the district court depends on the nature of the matter considered by the magistrate judge.  *See Baker*, 67 F. App'x at 310 (citations omitted) ("A district court normally applies a 'clearly erroneous or contrary to law' standard of review for nondispositive preliminary measures.  A district court must review dispositive motions under the *de novo* standard.").  Motions to suppress evidence are among the motions in criminal cases that are subject to *de novo* review.  *See* 28 U.S.C. § 636 (b)(1)(A); *U.S. Fid. & Guarantee Co. v. Thomas Solvent Co.,* 955 F.2d 1085, 1088 (6th Cir. 1992).  Upon review of the evidence, the district court may accept, reject, or modify the proposed findings or recommendations of the magistrate judge.  *Brown v. Bd. of Educ.*, 47 F. Supp. 3d 665, 674 (W.D. Tenn. 2014); *see also* 28 U.S.C. § 636(b)(1).  The court "may also receive further evidence or recommit the matter to the [m]agistrate [j]udge with instructions."  *Moses v. Gardner*, No. 2:14-cv-2706-SHL-dkv, 2015 U.S. Dist. LEXIS 29701, at *3 (W.D. Tenn. Mar. 11, 2015).  A district judge should adopt the findings and rulings of the magistrate judge to which no specific objection is filed.  *Brown*, 47 F. Supp. 3d at 674.  The district court is not required to review "a magistrate's factual or legal conclusions,

under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## FACTUAL OBJECTIONS

In the Report and Recommendation, the Chief Magistrate Judge sets forth proposed findings of fact. (ECF No. 58, 1–4.) As explained below, this Court denies Defendant's objections to the Chief Magistrate Judge's credibility determinations and adopts and incorporates the Report and Recommendation's proposed findings of fact. The Court proceeds mindful that "a magistrate judge is in the better position to assess the credibility of witnesses he sees and hears." *United States v. Johnson*, No. 10-20176, 2011 U.S. Dist. LEXIS 97577, at \*6 (W.D. Tenn. Aug. 30, 2011) (citation omitted).

Defendant objects only to the Chief Magistrate Judge's finding that the testimony of Defendant's wife, Mrs. Yolanda Shaw, was not credible. (ECF Nos. 58, 3–4 n. 2-3 & 59, 1–2.) Defendant states that the Magistrate did not provide any reason for this finding. (ECF No. 59, 2.) The Chief Magistrate Judge found that "Mrs. Shaw approached detectives to ask for an update on the investigation," and noted that Defendant "disputes that his wife approached law enforcement." (ECF No. 58, 3, n.2.) Defendant does not dispute that Mrs. Shaw gave consent to search the residence. Thus, with respect to the Fourth Amendment issue presented here, it makes no difference who approached whom first because, factually, it is irrelevant. However, the conflicting testimony may give rise to an issue of credibility. (*See id.*) The Magistrate Court found specifically: "To the extent that Mrs. Shaw's testimony contradicts that of Detective Hampton on this point, the undersigned finds that her testimony is not credible." (*Id.*) The Court is satisfied with this finding. Because the Magistrate Judge made a determination of credibility only as to the

issue of who approached whom, which is ultimately immaterial, Defendant's objection to this finding is **DENIED**.

The Chief Magistrate Judge also found that Mrs. Shaw signed the relevant consent form and led detectives to the location of the gun, which was placed inside Mrs. Shaw's daughter's bedroom closet. (*Id.* at 3–4.) The Chief Magistrate Judge noted that "Mrs. Shaw also testified that detectives had to remove things from the closet to search for the gun before she directed them to it," which contradicted the testimony of Detectives Hampton, Beans, and Dotson. (*Id.* at 4 n.3.) The detectives testified that the "gun box was in clear view when they opened the closet." (*Id.* at 4.) As to this finding of fact, the Magistrate Court again found that "to the extent that Mrs. Shaw's testimony contradicts that of the detectives, the undersigned finds that her testimony is not credible." (*Id.* at 4 n.3.) Regarding both of these findings, however, the Chief Magistrate Judge also found that these factual disputes were irrelevant to the legal analysis. (*Id.*) Defendant objects to the Chief Magistrate Judge's determination regarding Mrs. Shaw's credibility on this point. (ECF No. 59, 2.) As before, the Chief Magistrate Judge made a determination of credibility only to the extent that it conflicted with the detectives' testimony as to the gun box being in clear view. Again, the Court is satisfied with this finding. Because the credibility of the witnesses on this specific point is immaterial given that Mrs. Shaw had given consent to a search of the residence and led detectives to the closet, Defendant's objection is **DENIED**.

## ANALYSIS

Defendant argues that the police officers unconstitutionally avoided asking Defendant for consent to search the 670 Creekstone Circle residence. (ECF No. 59, 2–4.) Defendant also requests a hearing in the event that the Court denies Defendant's Objections and Motion to Suppress. (*Id.* at 5.)

4

*Consent to Search under the Fourth Amendment*

The issue presented by Defendant's Motion is whether the police officers in this case violated Defendant's Fourth Amendment right against unreasonable searches and seizures when they searched Defendant's residence upon consent of Defendant's co-occupying wife, while Defendant sat in the back of a police vehicle in close proximity to the officers. Defendant objects only to the Chief Magistrate Judge's conclusion that Defendant's constitutional rights were not violated because police did not remove Defendant from the premises to avoid his potential refusal to consent to search. (ECF No. 59, 2.) Defendant's Objections cite *Georgia v. Randolph*, 547 U.S. 103 (2006) and *United States v. Ayoub*, 498 F.3d 532 (6th Cir. 2007) in support of his position. (*Id.* at 2–3.)

In *Randolph*, the Supreme Court held that the defendant's constitutional rights were violated when police searched his residence pursuant to his wife's consent despite the defendant's physical presence and express refusal of consent to a search. 547 U.S. at 106–08. Valid consent is a well-settled exception to the Fourth Amendment's warrant requirement. *See Randolph*, 547 U.S. at 109 (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)). However, as *Randolph* held, a search of shared premises conducted pursuant to one co-occupant's consent is unreasonable as to another co-occupant who is physically present and has voiced his "express refusal of consent." *Id.* at 120. Notwithstanding, a potentially refusing co-occupant, "nearby but not invited to take part in the threshold colloquy, loses out." *Id.* at 121. Thus, a co-occupant's consent is valid when the potentially refusing co-occupant is absent, "[s]o long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection." *Id.* The question in this case is whether the police conduct ran afoul of *Randolph*.

5

The Chief Magistrate Judge recommended the denial of Defendant's Motion to Suppress "[b]ecause there is no evidence in this case that law enforcement removed Shaw to avoid a possible objection, [and] Shaw falls within the category of potential objectors 'nearby but not invited to take part in the threshold colloquy,' and he 'loses out' as a result." (ECF No. 58, 11.)   Defendant objects, arguing that the body camera video footage "shows that these detectives violated Mr. Shaw's constitutional rights by detaining him in their custody, intentionally avoiding asking for his consent to search the residence at 670 Creekstone Circle, and then intentionally subverting the warrant requirement by seeking consent from his wife." (ECF No. 59, 4.)   Again, the Court reviewed Officer Holst's body camera footage, and that footage does not support Shaw's position. In discussing the circumstances, the officers briefly mentioned possibly getting a search warrant or consent from Mrs. Shaw.  Clearly, however, nothing in the footage supports Shaw's argument that the officers intentionally avoided asking for Shaw's consent.

Defendant fails to identify any specific evidence from which this Court could infer that Defendant was detained by law enforcement for the purpose of avoiding his refusal of consent to search.  The Chief Magistrate Judge found, and Officer Holst's body camera confirms, that law enforcement did not remove Defendant for this purpose because they did not discuss searching the residence "until after the detectives arrived, at which point [Defendant] had already been detained in Deputy Holst's squad car for almost an hour."[1]  (ECF No. 58, 10.)  Defendant takes issue with the fact that the detectives did not ask Defendant for his consent to the search while he was detained

---

[1] In the "Objections to Proposed Conclusions of Law" section of his Objections, Defendant states that "[Defendant] was taken into custody and detained when the other detectives arrived on the scene." (ECF No. 59, 2.)  To the extent that Defendant makes this statement as an assertion of factual error committed by the Chief Magistrate Judge, this assertion is not supported by the record.  Regardless, when Defendant was detained by law enforcement is immaterial in this case given the lack of evidence that Defendant was detained in order to avoid his potential objection to a search of the residence. *See Randolph*, 547 U.S. at 121; *Ayoub*, 498 F.3d at 541.  Further, Detective Holst's hearing testimony indicated that Defendant was already detained in the back of Detective Holst's car when the detectives began discussing the possible need for a warrant and Mrs. Shaw's potential consent.  (*See* ECF No. 57, 35–42.)

6

in the police vehicle, arguing the "detectives specifically declined to ask him in order to attempt an end-run around the Randolph Court's requirements."   (ECF No. 59, 4.)   However, after reviewing the hearing transcript and viewing body camera footage, it is clear that Shaw's argument is without merit.

       *Randolph* contemplated situations in which one co-occupant is asked for consent while another co-occupant is not.  *See Randolph*, 547 U.S. at 122 ("[I]t would needlessly limit the capacity of the police . . . if we were to hold that reasonableness required the police to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received."); *see also Fernandez v. California*, 571 U.S. 292, 302 (2014) ("The *Randolph* dictum is best understood not to require an inquiry into the subjective intent of officers who detain or arrest a potential objector but instead refer to situations in which the removal of the potential objector is not objectively reasonable.")   Thus, there is no basis upon which this Court can conclude that, as a matter of constitutional propriety, the law enforcement officers were required to ask Defendant for his consent, given that Mrs. Shaw consented to the search.

       The Sixth Circuit's holding in *Ayoub* bolsters this Court's conclusions.   Applying *Randolph*, the *Ayoub* Court found no violation where police surveilled the defendant's residence, pulled the defendant over as he left his residence, and let him go, at which point they asked the defendant's sister for consent to search the home.  *See Ayoub*, 498 F.3d at 536, 540.  Though the Court indicated "we find it curious that the officers never asked Ayoub for consent," it found no violation because there was no evidence that the defendant was removed to avoid a possible objection.  *Id.* at 541.  Like the defendant in *Ayoub*, in this case, Defendant was simply "not invited to take part in the threshold colloquy," and accordingly, cannot show a constitutional violation. *See id.* at 540 (quoting *Randolph*, 547 U.S. at 121.)  To hold that Defendant was removed from

7

the purview of the residence for the purpose of avoiding his possible objection and obtaining Mrs.

Shaw's consent would be based on speculation rather than the evidence in the record.  Further, the

Chief Magistrate Judge found that Defendant was detained for a legitimate purpose—a finding

that Defendant has not specifically objected to.  (ECF No. 58, 11.)  Thus, Defendant's detention

was objectively reasonable, providing further support for the conclusion that law enforcement did

not violate Defendant's constitutional rights in this case.  *See Fernandez*, 571 U.S. at 302.

Accordingly, Defendant's Objections are **DENIED** and Defendant's Motion to Suppress is

**DENIED**.

*Defendant's Request for Hearing*

Defendant requests—should his Motion to Suppress be denied—that the Court "hold an

evidentiary hearing and make findings pursuant to *United States v. Moore*, 936 F.2d 287, 289 (6th

Cir. 1991)."  (ECF No. 59, 5.)  However, *Moore* stands for the simple proposition that "[e]ssential

findings on the record are necessary to facilitate appellate review."[2]  936 F.2d at 289 (citing *United*

*States v. Prieto-Villa*, 910 F.2d 601, 610 (9th Cir. 1990)).  The dispositive question in this case, as

explained above, is whether police removed Defendant for the purpose of avoiding a potential

objection to the search—or, whether Defendant's removal was objectively unreasonable.

*Fernandez*, 571 U.S. at 302.  Because Defendant does not point to evidence from which the Court

could find that Defendant was removed for the purpose of avoiding his potential refusal to consent,

further hearing on Defendant's Motion is unnecessary.  *See United States v. Winters*, 782 F.3d

289, 295 n.1 (6th Cir. 2015); *see also United States v. Mitchell*, No. 10-20299, 2012 U.S. Dist.

LEXIS 50891, at *10–11 (W.D. Tenn. Apr. 10, 2012) ("When a magistrate's findings and

---

[2] In *Moore*, the district court denied the defendant's motion to suppress through a "margin entry."  936 F.2d at 288.
The district court never provided a statement of its factual and legal findings.  *Id.*  Through this Order, this Court
provides its findings of fact and conclusions of law.

8

recommendations rest upon the evaluation of the credibility of a witness, the district court is not required to rehear the testimony in order to conduct a *de novo* determination of the issues."). Accordingly, Defendant's request for an evidentiary hearing is **DENIED**.

**CONCLUSION**

Upon *de novo* review, the Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation, **DENIES** Defendant's Objections, and **DENIES** Defendant's Motion to Suppress.

**IT IS SO ORDERED** this 25th day of February, 2021.

*s/John T. Fowlkes, Jr.*
John T. Fowlkes, Jr.
United States District Judge